UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICHAEL D. ELLINGTON, | ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 3:17-CV-262-HSM-DCP |
| SHAWN PHILLIPS, Warden, | ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION

Petitioner Michael D. Ellington, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee conviction for first-degree murder. Having considered the submissions of the parties, the State-court record, and the law applicable to Ellington's claims, the Court finds that the petition should be denied.

### I. SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Michael D. Ellington shot and killed his girlfriend, Julia Kinsey, on March 17, 2009 [*See, e.g.*, Doc. 6-1 p. 3-4]. He was indicted by a Monroe County Grand Jury with first-degree premeditated murder a few months later [*See id.*]. Following a jury trial where he claimed self-defense, Ellington was convicted as charged and was sentenced to life imprisonment [*Id.* at 6-7; *see also* Doc. 6-4 p. 59-66]. Ellington's conviction and sentence were affirmed by the Tennessee Court of Criminal Appeals ("TCCA") on direct appeal. *State v. Ellington*, No. 2012-00908-CCA-R3-CD, 2013 WL 5718184, at * 1 (Tenn. Crim App. Aug. 13, 2013) *perm. app. denied* (Tenn. Jan. 15, 2014) ("*Ellington I*"). The Tennessee Supreme Court denied Ellington's application for permission to appeal [Doc. 6-10]. Ellington did not petition the United States Supreme Court for a writ of certiorari [*See* Doc. 1 p. 2].

Thereafter, Ellington filed a pro se petition for post-conviction relief [Doc. 6-11 p. 3-17]. The post-conviction court subsequently appointed Ellington counsel who filed two amended petitions raising a claim that the State failed to disclose evidence favorable to the defense, along with numerous claims of ineffective assistance of counsel [*Id*. at 21-50]. Following an evidentiary hearing, the post-conviction court denied the petition [*Id*. at 74-92]. Ellington appealed the post-conviction court's decision to the TCCA, raising as a single issue whether the State failed to provide him with evidence to impeach the crime scene detective, and/or that counsel rendered ineffective assistance in failing to use the available impeachment evidence [*See* Doc. 6-18 p. 6-22]. The TCCA affirmed the denial of post-conviction relief. *Ellington v. State*, 2016 WL 7011578, at *1 (Tenn. Crim. App. Dec. 1, 2016) ("*Ellington II*"). Ellington did not file an application for permission to appeal to the Tennessee Supreme Court.

On or about June 19, 2017, Ellington filed the instant petition for federal habeas relief, raising the following claims, as paraphrased by Respondent:

1. Trial counsel was ineffective "by failing to put on any facts or counter-evidence which challenged the underlying facts asserted at trial by the State that the killing of the victim was" premeditated.

2. Trial counsel was ineffective by failing to suppress Petitioner's statement to police.

3. Trial counsel was ineffective by failing to object to prosecutorial misconduct during closing arguments.

4. Trial counsel was ineffective by failing to effectively cross-examine the crime scene detective and to use impeachment evidence to attack his credibility.

5. Trial counsel was ineffective by failing to object to the testimony of the medical examiner.

6. Trial counsel was ineffective by failing to put on proof of Petitioner's mental state as to the required *mens rea* for first-degree murder.

7. Trial counsel was ineffective by failing to raise facts sufficient to support a defense of self-defense.

8. Trial counsel was ineffective by failing to pursue and preserve for appeal in a motion for new trial the trial court's denial of trial counsel's motion to continue and the trial court's failure to rule on a motion to strike.

9. Trial counsel was ineffective by failing to raise numerous *Brady* claims in the motion for new trial, thereby waiving the issue on appeal.

10. Trial counsel was ineffective by failing to obtain the services of a firearm expert to testify that it was not possible for Petitioner to have shot the victim.

11. Trial counsel was ineffective by failing to object to the introduction of tampered evidence.

12. Trial counsel was ineffective by failing to obtain expert DNA evidence.

13. Trial counsel was ineffective by advising Petitioner not to testify without first filing a motion to suppress Petitioner's prior convictions.

14. Trial counsel was ineffective by failing to file for a bill of particulars.

15. Trial counsel was ineffective by failing to pursue or to communicate to Petitioner any plea offer in a manner that Petitioner could comprehend and understand.

16. Trial counsel was ineffective because trial counsel's cumulative errors failed to subject the State's case to adversarial testing.

17. Trial counsel's cumulative errors constituted a due process violation.

18. Appellate counsel was ineffective by failing to raise a *Brady* claim on appeal.

19. Appellate counsel was ineffective by failing to raise the issue of the cumulative effect of trial court errors on appeal.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to

4

exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III. DISCUSSION

### A. Procedurally Defaulted Claims (Claims 1-3 and 5-19)

Ellington has presented numerous ineffective assistance of trial and appellate counsel claims — Claims 1-3 and 5-19 — that have not been presented to the TCCA [*Compare* Doc. 6-11

p. 3-17, 21-50 *with* Doc. 6-18 p. 6-22].[1] A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust State remedies). Therefore, by failing to pursue these claims to the TCCA, Ellington failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Ellington has not argued that cause and prejudice exist to excuse the default, or that a fundamental miscarriage of justice would result from failure to review the claims on their merits. Therefore, Ellington has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

### B. Properly Exhausted Ineffective Assistance of Counsel Claim (Claim Four)

Ellington's fourth federal claim – that trial counsel was ineffective in failing to effectively cross-examine Detective Brannon and use impeachment evidence to attack his credibility – was presented to the TCCA [*See* Doc. 6-18 p. 6-22]. This Court's review of that claim is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief on a claim of ineffective assistance of counsel: (1) he must demonstrate constitutionally deficient performance,

---

[1] The Court notes that it appears as though Ellington's federal claims numbered 1-3, 5-9, and 13-19 were presented to the post-conviction court and not carried forward in appellate proceedings to the TCCA, while his federal claims numbered 10-12 do not appear to have been presented to the State courts [*See, e.g.*, Doc. 6-11 and 6-18].

and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

1. **Relevant Background Information**

Detective Douglas W. Brannon, a detective with the Monroe County Sheriff's Department, processed the physical evidence at the murder scene and testified at Ellington's trial [*See* Doc. 6-

3 p. 39-40]. Detective Brannon "did the observation and handling" of the evidence at the crime scene, while Detective Harrold took photographs and Detective Henry took notes [*Id*. p. 40]. Detective Brannon's trial testimony included his observations that a knife was found near the victim, that the victim's purse contained prescription bottles of hydrocodone and alprazolam, that shotgun shells were found on the floor of the bedroom where the murder occurred, that a single-barrel hammer shotgun was lying "broke[n] open" on the bed, and that the lock of the bedroom door was damaged by force applied to it at some point [*Id*. at 40-56, 59-60].

On cross-examination, Brannon testified that his law enforcement training familiarized him with the "21-foot rule," a general rule suggesting that "a person with an edged weapon within 21 feet is considered a dangerous threat" [Doc. 6-3 p. 100]. On redirect-examination, however, he stated that the rule existed to help train officers in avoiding the use of a weapon and did not establish a zone for justified killing [*Id*. at 103-04]. Trial counsel cited the 21-foot rule in closing argument to attempt to persuade the jury that Ellington acted in self-defense [Doc. 6-4 p. 63].

In his amended application for post-conviction relief, Ellington claimed that trial counsel had rendered ineffective assistance in failing to effectively cross-examine Detective Brannon and use impeachment evidence to attack his credibility by questioning his participation in an unrelated, undercover investigation involving suspect, John Edward Dawson [Doc. 6-11 p. 32-34]. During the *Dawson* investigation, former Detective Henry posed as an attorney pretending to act on Dawson's behalf, and Detective Brannon met with Dawson while posing as a mobster [*See, e.g.,* Doc. 6-12 p. 48-61, 76-80]. The conduct was severely criticized by the TCCA in its decision dismissing several indictments against Dawson. *See State v. Dawson*, No. E2009-02469-CCA-R3-CD, 2011 WL 208076 (Tenn. Crim. App. Jan. 13, 2011). Ellington's post-conviction counsel argued that Ellington's trial counsel had represented Dawson and thus knew of the officer misconduct in the *Dawson* case, and that she should have moved for corrective

8

action based on the State's failure to disclose information with which to impeach Detective Brannon at Ellington's trial [*See* Doc. 6-11 p. 32-33].

At the post-conviction evidentiary hearing in Ellington's case, Detective Brannon confirmed his involvement in the *Dawson* case and testified that he was not the lead investigator in Ellington's case, but one of several [Doc. 6-12 p. 76-81]. He recalled at trial that defense counsel had used his testimony to bolster Ellington's claim of self-defense [*Id*. at 99-101]. Ellington's trial counsel also testified at the post-conviction hearing, stating that she was aware at the time of Ellington's trial that Detective Brannon had admitted to posing as a mobster in the *Dawson* case, as she had represented Dawson [Doc. 6-13 p. 38-47]. Counsel stated she was not given additional information about Detective Brannon prior to Ellington's trial, but that she had developed the "edged-weapon defense" involving the 21-foot rule and was hoping to get Detective Brannon to admit that a person with a deadly weapon within that range would have posed a deadly threat [*Id*. at 50-53]. Trial counsel stated that given Detective Brannon's "mitigated" role in the *Dawson* investigation, she made a strategic decision to use Detective Brannon, a State's witness, to attempt to show that Ellington "was truly in danger" when he shot the victim [*Id*. at 53].

### 2. The State-Court Decision

In considering whether trial counsel rendered ineffective assistance regarding her cross-examination of Detective Brannon, the TCCA stated:

> As to this issue, the post-conviction court found that the "choices by trial counsel were conscious decisions made as a trial tactic and with specific strategy." In its entirety as to this issue, the post-conviction court stated:
>
>> As to the claims of ineffective assistance of counsel for failing to cross-examine Detectives Brannon and Henry concerning their misconduct on the *Dawson* case, these claims were unsupported by the evidence taken as a whole and wholly unrelated to the facts of the case. The Court recognized that impeachment evidence has value and that the conduct of these officers in the *Dawson* case was reprehensible. Nonetheless, the impact on impeachment was

> outweighed by the advantage of having a detective explain a principle important to the defense or set up a crime scene to allow a factual basis for the defense theory. Detective Henry appears to have been the more active actor, and perhaps more culpable actor, in the *Dawson* scheme. This man was not even called as a witness in the [petitioner's] case. These choices by trial counsel were conscious decisions made as a trial tactic and with specific strategy. This conclusion is bolstered by the candid admission by trial counsel, with the benefit of full knowledge and hindsight, that she most likely would have made the same decisions for strategic reasons.
>
> On appeal, the petitioner confines his argument regarding counsel's ineffectiveness to "impeaching evidence" in the form of Mr. Brannon's behavior in the *Dawson* investigation. We conclude that the post-conviction court properly found that lead counsel's decision to not impeach Mr. Brannon fell within the realm of trial tactics and strategy. Lead counsel testified that she did not attempt to impeach Mr. Brannon with information concerning the ruse in the *Dawson* case because she needed Mr. Brannon to testify as to the "21–foot rule," a law enforcement training concept that a person with an edged weapon within twenty-one feet is a risk sufficient to justify the use of lethal force, for the purpose of establishing the defense of self-defense. She also noted that Mr. Brannon's role in the ruse in the *Dawson* case was "much more mitigated," and she did not think she "would gain enough in impeaching him on that issue than [she] would gain attempting to use him to show that [the petitioner] was truly in danger[.]" As the petitioner failed to prove that counsel rendered deficient performance, we need not address whether the petitioner was prejudiced by counsel's failure to impeach Mr. Brannon.

*Ellington II*, 2016 WL 7011578, at *10.

### 3. Analysis

The record supports the TCCA's conclusion that trial counsel's decision not to impeach Detective Brannon was strategically made after she reasonably calculated that it would be more beneficial to use his testimony to establish that Ellington acted in self-defense when he shot the victim than it would be to expose his limited involvement in the *Dawson* case. Therefore, the Court finds that Ellington has not demonstrated that the TCCA's decision rejecting this claim was contrary to, or involved an unreasonable application of, *Strickland*, nor has he demonstrated that the decision was based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Ellington is not entitled to federal habeas relief as to this claim.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Ellington has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE